UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TV INTERACTIVE DATA CORPORATION, | Case No.  10-cv-00475-JCS |
| Plaintiff, | |
| v. | |
| SONY CORPORATION, et al., | |
| Defendants. | |

**FINAL JURY INSTRUCTIONS**

Dated: March 25, 2013

_____

Joseph C. Spero
United States Magistrate Judge

**JURY INSTRUCTION NO. 1**

**Duty of Jury**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case. Each of you has received a copy of the Court's Preliminary and Final Jury Instructions, which you may take with you to the jury room to consult during your deliberations. You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so. In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**JURY INSTRUCTION NO. 2**

**Burden of Proof − Preponderance of the Evidence**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## JURY INSTRUCTION NO. 3

### Burden of Proof − Clear and Convincing Evidence

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.  You should base your decision on all of the evidence, regardless of which party presented it.

**JURY INSTRUCTION NO. 4**

**What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

      1. the sworn testimony of any witness;

      2. the exhibits which are received into evidence; and

      3. any facts to which the lawyers have agreed.

United States District Court
Northern District of California

# JURY INSTRUCTION NO. 5

## What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

United States District Court
Northern District of California

# JURY INSTRUCTION NO. 6

## Direct and Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

## JURY INSTRUCTION NO. 7

### Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**JURY INSTRUCTION NO. 8**

**Expert Opinion**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.  Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## JURY INSTRUCTION NO. 9

### Charts and Summaries Not Received in Evidence

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**JURY INSTRUCTION NO. 10**

**Charts and Summaries in Evidence**

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 11**

**Summary of Contentions**

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on each of its contentions.  As I previously told you, TVI seeks money damages from Sony for allegedly infringing the '307, '863, '156 and '532 patents by making, importing, using, selling, offering to sell, supplying, and causing to be supplied, its DVD players, Blu-ray players and PlayStation3 consoles, which TVI argues are covered by claims 1, 9 and 17 of the '532 Patent; claims 1, and 9 of the '863 Patent, claim 1 of the '156 Patent; and claims 1, 2, and 18 of the '307 Patent.  These are the asserted claims of the '307, '863, '156 and '532 patents.  TVI has not asserted that claim 9 of the '863 Patent is infringed by Sony's DVD players.  TVI also argues that Sony has actively induced infringement of claim 1 of the '156 Patent; and claims 1, 2, and 18 of the '307 Patent and contributed to others' infringement of claim 1 of the '156 Patent; and claims 1, 2, and 18 of the '307 Patent.  The products that are alleged to infringe are Sony's DVD players, Blu-ray players, and PlayStation3 consoles.  The parties have agreed that the Sony BDP-S550 Blu-ray player is representative of all accused DVD and Blu-ray players for purposes of the parties' dispute over infringement/non-infringement.  The BDP-S550 Blu-ray player and PlayStation3 console are collectively referred to as the "Representative Products".

Sony denies that it has infringed the asserted claims of the '532, '863, '156, and the '307 Patents and argues that, in addition, all of these claims are invalid.  Sony also denies that it has induced others to infringe or contributed to infringement of any claim of the '532 or '307 Patents.

Your job is to decide whether any of the asserted claims of the '307, '863, '156 and '532 patents have been infringed and whether any of the asserted claims of the '307, '863, '156 and '532 patents are invalid.  If you decide that any claim of TVI's patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to TVI to compensate it for the infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account later.

**JURY INSTRUCTION NO. 12**

**Interpretation of Claims**

I have interpreted the meaning of some of the language in the patent claims involved in this case.  You must accept those interpretations as correct.  My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity.  The decisions regarding infringement and invalidity are yours to make.

The claim term "file" is a complete, identifiable collection of information, constituting a basic unit of storage that enables a computer to distinguish one set of information from another.

The claim term "initialization file" is a file which, alone or in combination with other file(s), contains information or data used or referenced to startup or configure software and/or hardware and is not then used to perform a further process or used as a driver.

The claim term "loading" means copying into memory.

The claim term "means for automatically loading an initialization file" is a host device programmed and/or configured to perform the disclosed algorithm of checking for and using an initialization file during booting from either a removable storage media (such as floppy disk) or a permanent storage medium which is an integral part of the host device, and equivalents thereof.

The claim term "first means for checking for a file of a first predetermined name" is a host device (e.g. computer) programmed to perform the disclosed algorithm of using the first predetermined name to determine if a file with the name is presented in or accessible from the storage medium, and equivalents thereof.

The claim term "second means for checking for a file of a second predetermined name" is a host device (e.g. computer) programmed and/or configured to perform the disclosed algorithm of using the second predetermined name to determine if a file with that name is present in or accessible from the storage medium, and equivalents thereof.

The claim term "said file other than said initialization file having a predetermined name that is compatible with said initialization file" is a file having a predetermined name, which name is consistently used by the initialized host device to seek a file.

United States District Court
Northern District of California

1     The claim term "returning to said step of automatically enabling" means returning to a

2  state in which the host device (e.g. computer) is prepared to process requests for attention to or

3  from hardware and/or software.

4     The claim term "without rebooting the [host] device" means without (1) resetting or

5  restarting the [host] device or (2) reloading or restarting an operating system in the [host] device.

6     All of the asserted claims have been interpreted to include a limitation of "without

7  rebooting the host device."

8     The claim term "means for detecting insertion of a storage media into a peripheral" is a

9  host device (e.g. computer) programmed to perform the disclosed algorithm of detecting insertion

10  of a storage media through polling or use of an interrupt from a storage peripheral, and equivalents

11  thereof.

12     The claim term "detecting insertion of a storage media into a peripheral" is detecting

13  insertion of a storage media into a peripheral.

14     The claim term "means for checking … for a file other than said initialization file" is a host

15  device (e.g. computer) programmed to perform the disclosed algorithm of determining if a file is

16  present in or accessible from the storage media, and equivalents thereof.

17     The claim term "predetermined name" is any name which is determined ahead of time.

18     The claim term "sequence of instructions to be executed" is two or more declarations or

19  commands to be executed.

20     The claim term "means for starting up said process" is a host device (e.g. computer)

21  programmed to perform the disclosed algorithms of starting up a process by either executing a file

22  of predetermined name which contains directions to start up a process or executing a new process

23  which, in turn, executes directions in a file of predetermined name to start up a process, and

24  equivalents thereof.

25     The claim term "automatically" means without user input of a file name.

26     The claim term "application" is a program designed to assist in the performance of a

27  specific task, such as word processing, accounting, or inventory management.

28

United States District Court
Northern District of California

1    The claim term "host device" means any device which can display to the user associated

2    electronic content encoded in remote and/or local storage media.

**JURY INSTRUCTION NO. 13**

**Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether TVI has proven that Sony has infringed one or more of the asserted claims of the '307, '863, '156 and '532 patents.  To prove infringement of any claim, TVI must persuade you that it is more likely than not that Sony has infringed that claim.  You are to determine infringement based solely on whether the Representative Products infringe each of the asserted claims.

# JURY INSTRUCTION NO. 14

## Direct Infringement

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent. Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Sony has made, used, sold, offered for sale or imported within the United States a product or method covered by an asserted claim of TVI's patents. You, the jury, make the decision in the second step.

With one exception, you must consider each of the asserted claims of TVI's patents individually, and decide whether Sony's products infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must find that its dependent claims are also not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its asserted dependent claims have also been infringed.

Whether or not Sony knew its products infringed or even knew of the patent does not matter in determining direct infringement.

The following instructions will provide more detail on direct infringement. You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement. These separate rules apply to claim 1 of the '156 Patent and claims 1 and 9 of the '863 Patent. I will describe these separate rules shortly.

**JURY INSTRUCTION NO. 15**

**Infringement**

To decide whether Sony's products infringe claim 1 of the '156 patent and claims 1 and 9 of the '863 patent, you must compare Sony's products with these patent claims and determine whether every requirement of the claim is included in Sony's products.  If so, Sony's products infringe those claims.  If, however, Sony's products do not have every requirement in the patent claim, Sony's products do not infringe that claim.  You must decide literal infringement for each asserted claim separately.

To decide whether Sony infringes claims 1, 2, and 18 of the '307 patent and claims 1, 9 and 17 of the '532 patent, you must find that Sony performed every requirement of the claim in the United States.  If so, Sony infringes that claim.  If, however, Sony does not perform every requirement in the patent claim, Sony does not infringe that claim.

The beginning portion, or preamble, of the asserted claims of the patents-in-suit uses the word "comprising."  "Comprising" means "including" or "containing."  A claim that uses the word "comprising" or "comprises" is not limited to products or methods having only the elements or steps that are recited in the claim, but also covers products or processes that add additional elements or steps.  A claim that uses "comprises" in the preamble is infringed as long as every requirement in the claim is present in Sony's products.  The fact that Sony's products also include other parts or steps will not avoid infringement, as long as they have every requirement in the patent claim.

United States District Court
Northern District of California

18

**JURY INSTRUCTION NO. 16**

**Means-Plus-Function Claims – Infringement**

I will now describe the separate rules that apply to "means-plus-function" requirements that are used in some claims. Claim 1 in the '156 patent and claims 1 and 9 in the '863 patent contain "means-plus-function" requirements. A means-plus-function requirement only covers the specific structure disclosed in a patent specification for performing the claimed function and the equivalents of those specific structures that perform the claimed function. A means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function.

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including not only a computer or calculator but a pencil and paper or even the human brain. But because the phrase is a means-plus-function requirement, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data and other means that are equivalent to it.

For purposes of this trial, I have interpreted each means-plus-function requirement for you and identified the structure in the patent specification that corresponds to these means-plus-function requirements.

Specifically, I have determined that:

1. "a host device programmed and/or configured to perform the disclosed algorithm of checking for and using an initialization file during booting from either a removable storage media (such as floppy disk) or a permanent storage medium which is an integral part of the host device, and equivalents thereof" is the structure that performs the "automatically  loading an initialization file" function identified in the means-plus-function requirement of claim 1 of the '156 patent and claim 1 of the '863 patent.

2. "a host device (e.g. computer) programmed to perform the disclosed algorithm of detecting insertion of a storage media through polling or use of an interrupt from a storage peripheral, and equivalents thereof" is the structure that performs the "detecting

insertion of a storage media into said peripheral" function identified in the means-plus-function requirement of claim 1 of the '156 patent and claims 1 and 9 of the '863 patent.

3. "a host device (e.g. computer) programmed to perform the disclosed algorithm of determining if a file is present in or accessible from the storage media, and equivalents thereof" is the structure that performs the "checking for a file other than said initialization file" function identified in the means-plus-function requirement of claim 1 of the '156 patent.

4. "a host device (e.g. computer) programmed to perform the disclosed algorithms of starting up a process by either executing a file of predetermined name which contains directions to start up a process or executing a new process which, in turn, executes directions in a file of predetermined name to start up a process, and equivalents thereof" is the structure that performs the "starting up said process" function identified in the means-plus-function requirement of claim 1 of the '156 patent and claims 1 and 9 of the '863 patent.

5. "a host device (e.g. computer) programmed to perform the disclosed algorithm of determining if a file is present in or accessible from the storage media, and equivalents thereof" is the structure that performs the "checking said storage media for a file other than said initialization file" function identified in the means-plus-function requirement of claim 1 of the '863 patent.

6. "a host device (e.g. computer) programmed to perform the disclosed algorithm of using the first predetermined name to determine if a file with the name is present in or accessible from the storage media, and equivalents thereof" is the structure that performs the "checking for a file of first predetermined name" function identified in the means-plus-function requirement of claim 9 of the '863 patent.

7. "a host device (e.g. computer) programmed and/or configured to perform the disclosed algorithm of using the second predetermined name to determine if a file with that name is present in or accessible from the storage medium, and equivalents thereof" is the structure that performs the "checking for a file of a second predetermined name"

20

1  function identified in the means-plus-function requirement of claim 9 of the '863

2  patent.

3  In deciding if TVI has proven that Sony's products include a structure covered by a means-

4  plus-function requirement, you must first decide whether the products have any structure that

5  performs the function I just described to you.  If not, the claim containing that means-plus-

6  function requirement is not infringed.

7  If you find that Sony's accused products do have structure that performs the claimed

8  function, you must then determine whether that structure is the same as or equivalent to the

9  structure I have identified in the specification.  If they are the same or equivalent, the means-plus-

10  function requirement is satisfied by that structure of the accused products.  If all the other

11  requirements of the claim are satisfied, the accused products infringe the claim.

12  In order to prove that a structure in the accused products is equivalent to the structure in

13  claim 1 of the '156 patent or claim 1 or claim 9 of the '863 patent, TVI must show that a person of

14  ordinary skill in the field would have considered that the differences between the structures

15  described in claim 1 of the '156 patent or claim 1 or claim 9 of the '863 patent and the structure in

16  the accused products are not substantial.  For the '156 patent, TVI must also show that the

17  structure was available on the date the '156 patent was granted of August 18, 1998.  For the '862

18  patent, TVI must show that the structure was available on the date the '863 patent was granted of

19  June 19, 2001.

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

21

**JURY INSTRUCTION NO. 17**

**Inducing Patent Infringement**

TVI argues that Sony has actively induced another to infringe claims 1, 2, and 18 of the '307 patent and claims 1, 9 and 17 of the '532 patent.  In order for there to be inducement of infringement by Sony, someone else must directly infringe a claim of the '307 and '532 patents; if there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, Sony must:

    1.   have intentionally taken action that actually induced direct infringement by another;

    2.   have been aware of the '532 and '307 patents; and

    3.   have known that the acts it was causing would be infringing.

If Sony did not know of the existence of the patent or that the acts it was inducing were infringing, it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that Sony was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that Sony took a risk that was substantial and unjustified.

If you find that Sony was aware of the '532 and '307 patents, but believed that the acts it encouraged did not infringe these patents, or that the patent was invalid, Sony cannot be liable for inducement.

# JURY INSTRUCTION NO. 18

## Contributory Infringement

TVI also argues that Sony has contributed to infringement by another of claims 1, 2, and 18 of the '307 patent and claims 1, 9 and 17 of the '532 patent. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by Sony, someone other than Sony must directly infringe a claim of the '307 patent or a claim of the '532 patent; if there is no direct infringement by anyone, there can be no contributory infringement. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

If you find someone has directly infringed a claim of the '307 patent or a claim of the '532 patent, then contributory infringement exists if:

(1) Sony supplied an important component of the infringing part of the product or method;

(2) The component is not a common component suitable for non-infringing use; and

(3) Sony supplied the component with the knowledge of the '307 patent or the '532 patent and knowledge that the component was especially made or adapted for use in an infringing manner, or that Sony supplied the component with the belief that it was highly probable that the component would be used in an infringing manner and it took intentional acts to avoid learning the truth.

A "common component suitable for non-infringing use" is a component that has uses other than as a component of the patented product or other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 19**

**Willful Infringement**

In this case, TVI argues that Sony willfully infringed TVI's patents.

To prove willful infringement, TVI must first persuade you that Sony infringed a valid claim of TVI's patents.  The requirements for proving such infringement were discussed in my other instructions.

In addition, to prove willful infringement, TVI must persuade you that it is highly probable that prior to the filing date of the complaint, Sony acted with reckless disregard of the claims of TVI's patents.

To demonstrate such "reckless disregard," TVI must persuade you that Sony actually knew, or it was so obvious that Sony should have known, that its actions constituted infringement of a valid patent.

In deciding whether Sony acted with reckless disregard for TVI's patents, you should consider all of the facts surrounding the alleged infringement.

**JURY INSTRUCTION NO. 20**

**Invalidity – Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether Sony has proven that the asserted claims of TVI's patents are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  Because patents are presumed valid, to prove invalidity of any patent claim, Sony must persuade you that it is highly probable that the claim is invalid.  Such evidence requires a higher standard of proof than by a preponderance of the evidence.

During this case, Sony asserts that certain prior art was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the patents.  Sony contends that such prior art invalidates certain claims of the patents.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the patents.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Sony's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

**JURY INSTRUCTION NO. 21**

**Anticipation**

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its claim limitations must be in a single previous device or method, or described in a single previous publication or patent that predates the claimed invention.  We call these things "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in a reference does not have to be in the same words as the claim, but all the requirements must be there, either stated or necessarily implied, so that someone of ordinary skill in the field looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Sony can show that a patent claim was not new:

- if the claimed invention was already publicly known or publicly used by others in the United States before the invention thereof by the applicant for patent;

- if the claimed invention was already patented or described in a printed publication anywhere in the world before the invention thereof by the applicant for patent.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

- if the claimed invention was in public use or on sale in this country, more than one year prior to the filing date of the application for patent in the United States of July 1, 1994;

- if the claimed invention was already made by someone else in the United States before the invention by the applicant, if that other person had not abandoned the invention or kept it secret;

- if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the invention by the applicant;

- if TVI and Sony dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor.  If one person

United States District Court
Northern District of California

conceived of the claimed invention first, but reduced to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it and (b) continued to work diligently to reduce it to practice.  A claimed invention is "reduced to practice" when it has been tested sufficiently to show that it will work for its intended purpose or when it is fully described in a filed patent application.

Since it is in dispute, you must determine a date of conception for the claimed invention and the prior invention.  Conception is the mental part of an inventive act and is proven when the claimed invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial.

**JURY INSTRUCTION NO. 22**

**Obviousness**

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field as of July 1, 1994.  This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of computer science who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1) the levels of education and experience of persons working in the field;

(2) the types of problems encountered in the field; and

(3) the sophistication of the technology.

TVI contends that the level of ordinary skill in the field was a person having a bachelor's degree in computer science or related discipline, such as electrical engineering or approximately three years practical experience in computer programming.  Sony contends that the level of ordinary skill in the field was a person having a bachelor's degree in computer science or related discipline, such as electrical engineering, computer engineering or physics, or approximately two to three years practical experience in computer programming or systems design of computers, gaming consoles, optical media players, or multimedia systems.

Second, you must decide the scope and content of the prior art.

Third, you must decide what difference, if any, exists between the claim and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

(1) commercial success of a product due to the merits of the claimed invention;

United States District Court
Northern District of California

1    (2) a long felt need for the solution provided by the claimed invention;

2    (3) unsuccessful attempts by others to find the solution provided by the claimed invention;

3    (4) acceptance by others of the claimed invention as shown by praise from others in the

4  field or from the licensing of the claimed invention;

5    (5) independent invention of the claimed invention by others before or about the same time

6  as the named inventor thought of it; and

7    (6) other evidence tending to show nonobviousness or obviousness.

8    Although you must consider any evidence of these considerations, the importance of any

9  of them to your decision on whether the claimed invention would have been obvious is up to you.

10    A patent claim composed of several elements is not proved obvious merely by

11  demonstrating that each of its elements was independently known in the prior art.  In evaluating

12  whether such a claim would have been obvious, you may consider whether Sony has identified a

13  reason that would have prompted a person of ordinary skill in the field to combine the elements or

14  concepts from the prior art in the same way as in the claimed invention.  There is no single way to

15  define the line between true inventiveness on the one hand (which is patentable) and the

16  application of common sense and ordinary skill to solve a problem on the other hand (which is not

17  patentable).  For example, market forces or other design incentives may be what produced a

18  change, rather than true inventiveness.  You may consider whether the change was merely the

19  predictable result of using prior art elements according to their known functions, or whether it was

20  the result of true inventiveness.  You may also consider whether there is some teaching or

21  suggestion in the prior art to make the modification or combination of elements claimed in the

22  patent.  Also, you may consider whether the innovation applies a known technique that had been

23  used to improve a similar device or method in a similar way.  You may also consider whether the

24  claimed invention would have been obvious to try, meaning that the claimed innovation was one

25  of a relatively small number of possible approaches to the problem with a reasonable expectation

26  of success by those skilled in the art.  However, you must be careful not to determine obviousness

27  using the benefit of hindsight; many true inventions might seem obvious after the fact.  You

28  should put yourself in the position of a person of ordinary skill in the field at the time the claimed

United States District Court
Northern District of California

29

invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 23**

**Inventorship**

Sony can meet its burden of proving that a patent is invalid by showing that it fails to name all actual inventors and only the actual inventors. This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of one or more claims of the patent. Persons may be inventors even though they do not physically work together or make the same type or amount of contribution, or contribute to the subject matter of each claim of the patent. However, merely helping with experimentation by carrying out the actual inventor's instructions or explaining the actual inventor's well-known concepts or the current state of the art does not make someone an inventor.

**JURY INSTRUCTION NO. 24**

**Damages − Burden of Proof**

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Sony infringed any valid claim of the patents-in-suit, you must then determine the amount of money damages to be awarded to TVI to compensate it for the infringement.

The amount of those damages must be adequate to compensate TVI for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

TVI has the burden to persuade you of the amount of its damages.  You should award only those damages that TVI more likely than not suffered.  While TVI is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  TVI is not entitled to damages that are remote or speculative.

**JURY INSTRUCTION NO. 25**

**Damages − Reasonable Royalty**

TVI seeks as damages a reasonable royalty for infringing sales by Sony.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed that patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

United States District Court
Northern District of California

33

## JURY INSTRUCTION NO. 26

### Damages − Reasonable Royalty − Relevant Factors

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patents-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

United States District Court
Northern District of California

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee − who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention − would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

## JURY INSTRUCTION NO. 27

### Damages − Products

If you award damages, you must determine a reasonable royalty rate for each of the products: DVD players, Blu-ray players and PS3.  Once you have determined a reasonable royalty rate, you will multiply that royalty by the number of units for each of the three products indicated on the verdict form.  You will then add the amount of damages for each of the three products to arrive at the total amount of damages.

**JURY INSTRUCTION NO. 28**

**Duty to Deliberate**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**JURY INSTRUCTION NO. 29**

**Consideration of Evidence − Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.
>
> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**JURY INSTRUCTION NO. 30**

**Use of Notes**

Whether or not you have taken notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 31**

**Communication with the Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through Karen Hom, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 32**

**Return of Verdict**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

United States District Court
Northern District of California